WILLIAM SMITH vs. COMMONWEALTH.

Suffolk.   February 4, 1982. — May 28, 1982.

Present: HENNESSEY, C.J., WILKINS, LIACOS, & O'CONNOR, JJ.

*Practice, Civil,* Standing.  *Supreme Judicial Court,* Superintendence of inferior courts.  *Witness,* Immunity.

The defendant in a pending criminal case lacked standing to challenge in a proceeding under G. L. c. 211, § 3, the legality of an order of a single justice of this court providing transactional immunity to a prospective witness against him.  [346-350]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on September 1, 1981.

The case was heard by *Nolan, J.*

*William F. Long, Jr.* (*Thomas Leedham* with him) for the defendant.

*Ralph K. Mulford,* Assistant District Attorney (*Philip L. Weiner & Patricia Ellis,* Assistant District Attorneys, with him) for the Commonwealth.

HENNESSEY, C.J.  The defendant was indicted in February, 1981, for murder, and a trial is pending.  In September, 1981, he applied for relief under G. L. c. 211, § 3, asking this court to revoke the immunity of a witness who will testify against him.  A single justice denied relief, and the defendant appealed to the full court.  We conclude that the defendant has no standing to challenge the grant of immunity, and is entitled to no relief.

A young woman named Doreen Levesque was murdered in October, 1979.  Another young woman, Karen Marsden, was murdered in February, 1980.  Police records and grand jury minutes reproduced in the record indicate that these murders were among a series of ritual killings performed in the Fall River area by members of a Satanic cult.  The defend-

ant, William Smith, is charged with participation in the first of the murders named above, that of Doreen Levesque.

The witness in question is Robin Murphy. In the spring of 1980, police received information connecting Robin Murphy to the Levesque and Marsden murders. Murphy was interrogated, and admitted that she had been involved.[1] She described the practices of the Satanic cult and indicated that both victims had been connected with the cult, either as devotees of the faith or as associates in a prostitution enterprise. She also gave a rather vague description of "Willie," whom she named as a participant in the Levesque murder.

In May, 1980, a grand jury indicted Robin Murphy and others for the murder of Karen Marsden. On January 14, 1981, Murphy pleaded guilty to murder in the second degree.[2]

On January 16, 1981, Murphy appeared as a witness before a grand jury investigating a possible conspiracy to murder Karen Marsden.[3] She was asked several questions about the planning and execution of the Marsden murder, but was not asked specifically about the Levesque murder. In response to all questions, she invoked her right to remain silent, as guaranteed by the Fifth Amendment to the United States Constitution.

---

[1] Her stories over a period of months were inconsistent. She stated at times that she had been present at both murders, but asserted at other times that she knew nothing of, or had only heard about, the crimes.

[2] On the same day, the Commonwealth filed a nolle prosequi with respect to murder in the first degree, based expressly upon Murphy's agreement to testify against codefendants charged with murder of Karen Marsden, in exchange for a grant of transactional immunity. The Commonwealth purported to reserve the right to reindict Murphy for murder in the first degree if she failed to honor the agreement. We need not comment on the obvious argument that the latter portion of the nolle prosequi contravened double jeopardy principles.

[3] It appears that in November, 1980 — after Murphy was indicted for the murder of Karen Marsden but before she pleaded guilty — the Commonwealth for the first time received evidence that the Marsden murder had been planned in advance. This new information triggered the conspiracy investigation.

On February 9, 1981, the Commonwealth applied to a single justice of this court for an order of immunity for Robin Murphy. G. L. c. 233, §§ 20C-20E, 20G, inserted by St. 1970, c. 408.[4] In its application, the Commonwealth stated its belief, based on conversations with Murphy, that the conspiracy to murder Karen Marsden was inspired in part by Marsden's knowledge of the Levesque murder. The single justice issued an order of immunity specifically covering "the transactions surrounding the death[s] of Doreen Levesque and Karen Marsden."

On February 17, 1981, Murphy testified before a grand jury investigating the defendant's role in the murder of Doreen Levesque.[5] She described the ritual that accompanied the murder, and named various participants. She also recited that in a previous photographic identification procedure she had identified William Smith (the defendant) as "Willie," one of the persons present at the murder. She then described in some detail Willie's part in the killing. Murphy later appeared at the trials of other defendants, and she testified about both the Marsden and Levesque murders. She has since denied, and then reaffirmed, the truth of her testimony.

---

[4] General Laws c. 233, § 20C, provides that a witness who asserts his right to remain silent may be compelled to testify if he is granted transactional immunity. Section 20D provides that witnesses may be immunized in proceedings involving certain enumerated crimes, including murder and conspiracy to commit murder. Section 20E details the procedure by which the Commonwealth may apply to a single justice for an order of immunity. The single justice may grant immunity and order the witness to testify if he "finds that the witness did validly refuse to answer questions or produce evidence on the grounds that such testimony or such evidence might tend to incriminate him," and that the crime under investigation is a proper subject of immunity under § 20D. Section 20G defines the scope of the immunity, which extends to any "transaction matter, or thing concerning which he is so compelled, after having claimed his privilege against self-incrimination, to testify or produce evidence." Refusal to testify after a grant of immunity is punishable as contempt of court. G. L. c. 233, § 20H.

[5] The record does not indicate whether Murphy ever returned to testify before the grand jury investigating the conspiracy to murder Karen Marsden.

The defendant contends that the grant of immunity to Robin Murphy did not conform to the authorizing statute, G. L. c. 233, §§ 20C-20E, 20G, and asks that we exercise our extraordinary powers of superintendence under G. L. c. 211, § 3, to nullify the immunity. He points, in rather obscure fashion, to at least three perceived defects in the immunity order. First, he argues that the order should not have covered the murder of Doreen Levesque, because the witness Murphy had not asserted her privilege against self-incrimination specifically with respect to that murder. Second, he claims that the immunity did not adequately protect the witness, because she was only sixteen at the time of the Levesque murder, and so was amenable to delinquency charges, which are not mentioned in the immunity statute.[6] See G. L. c. 233, § 20D. Finally, the defendant appears to object to the fact that the witness had pleaded guilty to the murder of Karen Marsden, and was serving a prison sentence. We express no opinion on the merits of these arguments, because the defendant has not made a threshold showing that he is entitled to relief under G. L. c. 211, § 3.

A defendant seeking interlocutory relief under G. L. c. 211, § 3, must allege a violation of a personal, substantive right, and his claim must be substantial. He must also show that unless interlocutory relief is granted, irreversible harm will follow. *Costarelli* v. *Commonwealth*, 374 Mass. 677, 679-680 (1978). *Gilday* v. *Commonwealth*, 360 Mass. 170, 171 (1971). The defendant's application fails to meet this test for a number of reasons, the most obvious of which is that he has no standing to press the arguments he raises.[7]

---

[6] The defendant's contention that the witness was sixteen at the time of the Levesque murder is not verified by the record.

[7] In addition, the defendant has not identified any particular judicial action in a proceeding against him as an error or potential error. He was not a party to the original application for immunity, and no action has been taken on his motions to dismiss the indictment against him and to suppress Murphy's identification of him. Further, his brief fails completely to set forth the procedural posture of the case.

We have held, without qualification, that a defendant "has no standing to argue that the testimony of . . . purportedly immunized witnesses [is] the product of improper grants of immunity." *Commonwealth* v. *Simpson*, 370 Mass. 119, 121 (1976) (Superior Court had not followed statutory procedures for immunity order). Accord, *United States* v. *Ellis*, 595 F.2d 154, 163 (3d Cir.), cert. denied, 444 U.S. 838 (1979); *United States* v. *Hathaway*, 534 F.2d 386, 402 (1st Cir.), cert. denied, 429 U.S. 819 (1976); *United States* v. *Braasch*, 505 F.2d 139, 146 (7th Cir. 1974), cert. denied, 421 U.S. 910 (1975); *United States* v. *Leonard*, 494 F.2d 955, 972-973 (D.C. Cir. 1974); *United States* v. *Lewis*, 456 F.2d 404, 408-410 (3d Cir. 1972); *Lopez* v. *Burke*, 413 F.2d 992, 994 (7th Cir. 1969). But cf. *Ellis* v. *United States*, 416 F.2d 791, 798-800 (D.C. Cir. 1969). This rule is supported by sound reasons. The privilege against self-incrimination is a personal right of the witness, and one that the witness is in a position to protect by his own means. *Commonwealth* v. *Simpson, supra. Goldstein* v. *United States*, 316 U.S. 114, 121 n.11 (1942). Moreover, the statutory procedure for a grant of immunity is designed to accommodate the witness's rights and the State's need for evidence. The statute is simply not addressed to the interests of defendants.[8]

The defendant, apparently seeking an exception to the established rule, suggests that the immunity order affects him personally. He argues first, because the order covers two transactions, the witness is forced to adhere to her original "immunity story"[9] in a series of proceedings, including those against him. He also contends that because the witness was in prison when she was immunized and will remain in prison through the defendant's trial, she is likely

---

[8] The only provision in the immunity statute that relates to the defendant is G. L. c. 233, § 20I, which provides that a defendant cannot be convicted solely on the basis of the testimony of an immunized witness.

[9] Presumably, this phrase refers to the witness's statement to State authorities prior to her grant of immunity, and perhaps to her testimony in prior trials.

to be influenced by State authorities, and unlikely to fear a sentence for perjury. These circumstances, the defendant argues, detracted from the integrity of the grand jury that indicted him, and will deprive him of basic fairness and effective assistance of counsel at trial. He also argues that the order was "imprecise," and that its imprecision prevents him from exposing by cross-examination its effect on the witness.

The defects that the defendant perceives in the witness's testimony have no relation to the terms of her immunity. The witness's obligation to testify consistently in successive proceedings arises from the laws with respect to perjury. The possibility that she is biased in favor of the Commonwealth is an unavoidable incident of her status as a prisoner and her desire for parole. Moreover, the various constraints on the witness are matters of credibility. They can be explored fully on cross-examination, and we find nothing "imprecise" in the order that might frustrate the defendant's examination of the witness.[10]

In sum, the defendant has not established that the grant of immunity to Robin Murphy affected him in any way other than making available her testimony against him. The cases the defendant cites in support of his standing are inapposite.[11] There is no cause for an exception to the rule that a defendant lacks standing to challenge a witness's immunity, and no grounds for relief under G. L. c. 211, § 3. The order of the single justice is therefore affirmed.

*So ordered.*

---

[10] In describing the "imprecision" of the order, the defendant states that "a de facto revocability was incorporated in the immunity grant via the nolpros." By this he apparently means that the Commonwealth's statement in its nolle prosequi, reserving the right to reindict Murphy for murder in the first degree of Karen Marsden (see note 2, *supra*) modified the terms of the immunity order subsequently issued by a single justice of this court. This, of course, is not possible, since the Commonwealth had no power to modify the immunity order without the assistance of this court.

[11] The defendant cites *Commonwealth* v. *Gallant,* 381 Mass. 465 (1980); *Commonwealth* v. *Genest,* 371 Mass. 834 (1977); *United States* v. *Ceccolini,* 435 U.S. 268 (1978); *Wong Sun* v. *United States,* 371 U.S. 471 (1963), arguing that these decisions recognize defendants' standing in analogous situations. They do not.