A Superior Court jury convicted the defendant of: (a) unarmed burglary with respect to the break-in at one home in Randolph, (b) breaking and entering a dwelling in the daytime, with the intent to commit a felony with respect to a break-in at a different Randolph home, and (c) possession of burglarious tools. The jury found him not guilty of attempt to commit a crime (an attempted break-in at a third Randolph home).[2] On appeal, the defendant principally challenges the sufficiency of the evidence that he was the one who committed the two break-ins at issue. Finding no error, we affirm.
Background. In a challenge to the sufficiency of the evidence, we examine whether, "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), quoting from Jackson v. Virginia, 443 U.S. 307, 318-319 (1979). Viewing the evidence in that light, rational jurors could have found the following facts.
Jessica Lopez and Juan Morales lived at 71 Belcher Street in Randolph. During the evening of April 23, 2013, someone broke into their home (the Lopez/Morales home). When they returned to the home at approximately 8:00 P.M. , they found the intruder inside the home handling an item that Morales recognized to be their iPad tablet. The intruder was an African-American male approximately six feet tall wearing a dark "hoodie," blue jeans, and white sneakers. Morales exchanged words with him and learned that the intruder had a deep voice. The intruder eventually fled the scene running from their backyard in the direction of North Main Street (a north-south street that is parallel to Belcher Street to the west) and School Lane (an east-west street that is perpendicular to Belcher Street to the north).[3]
Lopez contacted the police who, already having mobilized to investigate a report of an attempted break-in at 41 Vine Street in Randolph that occurred at approximately 7:30 P.M. , responded quickly and established a perimeter. A police lieutenant observed someone meeting the suspect's description in the vicinity of 509 North Main Street, and radioed in this information. As a result, a second officer came to that location accompanied by a German Shepard K-9 trained in trailing suspects. The K-9 and its handling officer followed a scent trail that took them to a spot on School Lane where, one minute earlier, another officer had spotted someone meeting the suspect's description cross that street. They continued to follow the scent trail. Approximately three minutes later, the officer and his K-9 found the defendant trying to hide beneath a piece of plywood. On his person, the police found, among other items, a Winchester brand multitool in a black case and a screwdriver. In the immediate vicinity of where he was apprehended, the police found a pair of black gloves and a flashlight. The police located the defendant's car parked on Belcher Street.
Unbeknownst to the police at this time, another break-in already had occurred at the home of Denis Babineau (Babineau home) on nearby Liberty Street, an east-west street that intersects Belcher Street and lies one block north of School Lane).[4] Babineau eventually reported three items missing from his home: (a) a Winchester multitool in a black sheath, (b) a Ryobi brand jigsaw in a case inscribed with the letters "DHE," and (c) a black knife with a rubber handle, serrated blade, and fold-out screwdriver. Just such items were found, respectively, on the defendant's person, in his car, and in the Lopez/Morales home's backyard. Babineau identified all three found items as his.
The items reported missing from the Lopez/Morales home-including the referenced iPad and a Nintendo DS game system-were not found. Although the police conducted a search of the area where the defendant was apprehended, that search was hampered by the fact that it was being conducted at night in a wooded area littered with debris. The police conducted an unsuccessful follow-up search the next day that focused on looking for a gun that the defendant had mentioned after he was arrested.
Discussion. 1. Sufficiency. A. Breaking and entering of the Babineau home. We need not pause long on the sufficiency of the evidence tying the defendant to the Babineau home break-in, because there was ample evidence upon which rational jurors could find him guilty beyond a reasonable doubt.
A "defendant's mere possession of recently stolen property may be relied upon by the jury as evidence that he had stolen it." Commonwealth v. Latney, 44 Mass. App. Ct. 423, 425 (1990) (breaking and entering conviction upheld where the defendant was found in possession of stolen property two hundred yards from the break-in). Here, the defendant was found-close in both time and distance to the break-in[5] -in direct possession of one item stolen from the Babineau home (the multitool). Another stolen item that was especially distinctive (the Ryobi jigsaw in a case inscribed with "DHE") was found in his car.[6] There was additional evidence that added weight to the Commonwealth's case even if it would not have been sufficient to convict the defendant on its own. For example, a rational trier of fact could conclude that the fact that Babineau's knife with the screwdriver tips was found in the Lopez/Morales home's backyard supports an inference that the breaking and entering into the Babineau home was committed by the same person who Lopez and Morales had observed there (that is, someone, like the defendant, who was an African-American male of approximately six feet in height, who had a deep voice, and who was dressed in a dark hoodie, blue jeans, and white sneakers). The evidence that the defendant broke into the Babineau home plainly was sufficient.
B. The burglary of the Lopez/Morales home. Whether there was sufficient evidence that it was the defendant who burglarized the Lopez/Morales home presents a slightly closer question. Although there were two eyewitnesses to the crime, their description of the intruder, while consistent with that of the defendant upon his arrest, was general and based in great part on relatively common clothing. See Commonwealth v. Rivera, 91 Mass. App. Ct. 796, 799 (2017) ("The generic description of dark clothing was, alone, insufficient to prove that the defendant was one of the culprits beyond a reasonable doubt"). Moreover, the eyewitnesses never claimed to have gotten a good look at the intruder's face, and they were never asked to identify the defendant as the intruder before or during trial. Finally, no property stolen from the Lopez/Morales home was ever found in the defendant's possession or in the area where the defendant was arrested.
Nevertheless, viewing the Commonwealth's evidence as a whole, we conclude that it was sufficient to send the case to the jury. The police found someone meeting the eyewitnesses' description in the area toward which the intruder from the Lopez/Morales home break-in was observed traveling. No one else was seen on the street during that time period. Moreover, when the police pursued him, the defendant demonstrated his consciousness of guilt by fleeing and attempting to hide under a piece of plywood. See Commonwealth v. Figueroa, 451 Mass. 566, 579 (2008), quoting from Commonwealth v. Carita, 356 Mass. 132, 140 (1969) ("It is well settled that evidence of flight may be introduced to show consciousness of guilt"). Moreover, as discussed above, there was solid evidence that shortly before the break-in of the Lopez/Morales home, the defendant had broken into a different home nearby, and from the discovery of Babineau's knife in the Lopez/Morales home's backyard, the jury could have inferred that the crimes were committed by the same person. Even if the evidence linking the defendant to the burglary at the Lopez/Morales home was not overwhelming, it was sufficient.
C. Possession of burglarious tools. As noted, when he was arrested, the defendant was found in possession of a screwdriver. "Where, as here, the tools or instruments possessed by the defendant[ ] are not by their nature burglarious, the Commonwealth must establish proof of the [defendant's] intent to use the tools or instruments for burglarious purposes." Commonwealth v. Squires, 476 Mass. 703, 708 (2017). Here, proof of such intent is readily supplied by the evidence discussed above that the defendant did in fact break into two buildings in the area.
2. Closing argument. The defendant makes one argument related to the prosecutor's closing argument. Specifically, he claims error in the prosecutor's statement, "You [the jury] heard [the defendant's] voice, so you can judge that also in terms of the credibility of the voice that Mr. Morales heard and his exchange with the [d]efendant." According to the defendant, this statement inaccurately implied that Morales had made a voice identification of the defendant. Because no objection was lodged at trial, our review is limited to whether any error created a substantial risk of a miscarriage of justice. See Commonwealth v. King, 77 Mass. App. Ct. 194, 202 (2010), S.C., 460 Mass. 80 (2011).
The prosecutor plainly misspoke, because-read literally-the quoted statement is nonsensical. It appears that the prosecutor was trying to convince the jury that the voice they heard the defendant use (in his recorded statement to the police and his trial testimony) was a "deep voice" similar to the one that Morales stated he heard the intruder use. In addition, perhaps-as the Commonwealth suggests in its brief-the prosecutor was asking the jury to compare the demeanor that the jury saw him exhibit with that described by Morales. Either way, we see no appreciable risk that the jury interpreted the prosecutor's statement as suggesting that Morales had made a voice identification of the defendant, especially given that there was no hint in the trial evidence that such an identification had been made. In any event, the judge cautioned the jury that closing arguments are not evidence and that they should rely on their own recollection of the evidence. There was no substantial risk of a miscarriage of justice.
Judgments affirmed.

The jury also found the defendant not guilty of resisting arrest, and of wilfully injuring a police dog. The Commonwealth filed a nolle prosequi for larceny in an amount more than $250. After the jury verdicts, the defendant pleaded guilty to two counts of habitual criminal enhancements related to the unarmed burglary and breaking and entering convictions. The Commonwealth filed a nolle prosequi for an enhancement count related to the attempted break-in charge.

The jury had the benefit of two street maps, which were introduced as exhibits. The smaller of these two maps, which showed the layout of the relevant streets and the locations of the break-ins and of the address where the defendant was apprehended, was included in the Commonwealth's supplemental appendix.

Babineau discovered the break-in when he returned home at approximately 8:45 p.m. However, rational jurors readily could infer that this break-in occurred before the break-in at the Lopez/Morales home.

The defendant was arrested approximately one-quarter of one mile from the Babineau home.

The fact that the defendant claimed that the jigsaw was his, not Babineau's, does not change the sufficiency analysis. As the sole evaluator of the witnesses' credibility, the jury were free not to credit the defendant's claim.