NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

14-P-753                                          Appeals Court

COMMONWEALTH  vs.  DOMINIC REZENDES.

No. 14-P-753.

Plymouth.     May 11, 2015. - September 17, 2015.

Present:  Cypher, Meade, & Massing, JJ.


Firearms.  Assault and Battery by Means of a Dangerous Weapon.
    Practice, Criminal, Prior conviction, Sentence.  Delinquent
    Child.  Words, "Violent crime," "Deadly weapon."



    Indictments found and returned in the Superior Court
Department on February 18, 2011.

    The cases were tried before Merita A. Hopkins, J.


    James A. Reidy for the defendant.
    Jessica Heaton, Assistant District Attorney, for the
Commonwealth.


    CYPHER, J.  This case requires us to consider the meaning

of "violent crime" as used in the Massachusetts Armed Career

Criminal Act (Massachusetts ACCA or statute), G. L. c. 269,

§ 10G, inserted by St. 1998, c. 180, § 71.  Specifically, we

must interpret the term "deadly weapon," as used in the

definition of violent crime in G. L. c. 140, § 121, as amended by St. 1998, c. 180, § 8. The defendant, Dominic Rezendes, appeals from a conviction under § 10G(c) of the Massachusetts ACCA, which was based, in part, on a juvenile adjudication for assault and battery by means of a dangerous weapon (a pen).

We first conclude that the term "deadly weapon" in this context is distinct from the term "dangerous weapon" as applied in our common law. We further hold that for the purposes of conviction under G. L. c. 269, § 10G, a deadly weapon is a weapon that is inherently deadly, and therefore conclude that a pen is not a deadly weapon under this statute. Accordingly, under these circumstances, the defendant's juvenile adjudication for assault and battery by means of a dangerous weapon could not have formed the basis for a conviction under the Massachusetts ACCA. We reverse the defendant's conviction under G. L. c. 269, § 10G(c), and remand for resentencing under G. L. c. 269, § 10G(b).

Background. In July, 2013, a jury convicted the defendant on two indictments charging assault and battery by means of a dangerous weapon and three indictments involving weapons charges: unlawful possession of a firearm, in violation of G. L. c. 269, § 10(a); unlawful discharge of a firearm within 500 feet of a building, in violation of G. L. c. 269, § 12E; and unlawful possession of a loaded firearm, in violation of G. L.

c. 269, § 10(n).[1]  The indictment charging unlawful possession of a firearm carried an additional count of being an armed career criminal[2] under the Massachusetts ACCA, based on two prior convictions and an adjudication of delinquency for assault and battery.  Following a jury-waived trial on this count of the indictment, the judge concluded that the defendant had committed three predicate offenses and found him guilty of being an armed career criminal.[3]

The three predicate offenses included an adjudication as delinquent for assault and battery by means of a dangerous weapon (a pen) from when the defendant was sixteen years old, as well as guilty pleas as an adult to charges of assault and

---

[1] The defendant does not challenge these convictions, and the facts associated with these convictions are not relevant to his appeal.

[2] "The term 'armed career criminal' derives from the Federal Armed Career Criminal Act of 1984, 18 U.S.C. § 924(e) (2006)," Commonwealth v. Anderson, 461 Mass. 616, 626 n.10 (2012), but it also is used consistently in reference to the Massachusetts ACCA.

[3] Consistent with the mandatory minimum sentencing guideline, the judge sentenced the defendant to from fifteen to sixteen years in State prison for carrying a firearm with three predicate offenses under the Massachusetts ACCA.  She then sentenced him to from nine and one-half to ten years in State prison for each of the assault and battery by means of a dangerous weapon charges and three months in the house of correction for the firearm discharge conviction, all of them to run concurrently with the armed career criminal sentence.  Lastly, the judge sentenced him to one day in the house of correction for the possession of a loaded firearm charge to be served from and after his armed career criminal sentence.

battery and assault and battery by means of a dangerous weapon. The juvenile adjudication involved an altercation at a juvenile detention facility in which the defendant was seen "gouging at the victim" with a pen.

Discussion.  The Massachusetts ACCA provides for enhanced penalties for the unlawful possession of a firearm by individuals who have been previously convicted of violent crimes, as defined in G. L. c. 140, § 121.[4]  For the purposes of the statute, the Legislature defined violent crime as follows:

> "any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or possession of a deadly weapon that would be punishable by imprisonment for such term if committed by an adult, that:  (i) has as an element the use, attempted use or threatened use of physical force or a deadly weapon against the person of another; (ii) is burglary, extortion, arson or kidnapping; (iii) involves the use of explosives; or (iv) otherwise involves conduct that presents a serious risk of physical injury to another" (emphasis supplied).

G. L. c. 140, § 121.

The defendant argues that because his prior juvenile adjudication for assault and battery by means of a dangerous weapon did not involve a deadly weapon, it was not a violent crime under the Massachusetts ACCA, and, therefore, could not

---

[4] The statute also applies to individuals with prior convictions of serious drug offenses, as defined in G. L. c. 269, § 10G(e), or some combination of violent crimes and serious drug offenses.  The statute requires the imposition of mandatory minimum sentences of increasing severity for individuals with one, two, or three qualifying convictions or adjudications.

qualify as a predicate offense to support a conviction as an armed career criminal under G. L. c. 269, § 10G(c). Because this is a question of law, we conduct an independent review. See Commonwealth v. Rogers, 444 Mass. 234, 235 n.2 (2005).

It is undisputed that, if committed by an adult, an assault and battery by means of a dangerous weapon would be punishable by imprisonment for a term exceeding one year and thus would constitute a violent crime under the Massachusetts ACCA. However, when committed by a juvenile, an act may be used to enhance a firearm sentence only when it "involv[ed] the use or possession of a deadly weapon." G. L. c. 140, § 121. See Commonwealth v. Anderson, 461 Mass. 616, 628-629 (2012). Therefore, the defendant's appeal hinges on whether there is a distinction between the term "deadly weapon," as used in this definition of violent crime, and "dangerous weapon," as that term is defined under our common law.

1. Legal significance of the term "deadly weapon." Because the Legislature did not define "deadly weapon" in § 121,[5]

_____

[5] By the explicit terms of G. L. c. 140, § 121, its definitions do not apply to other terms defined within that section itself, so no other language in the section informs the meaning of the term "deadly weapon." See Commonwealth v. Foreman, 63 Mass. App. Ct. 801, 803 (2005). Furthermore, the Legislature has not defined "deadly weapon" elsewhere in the General Laws. In addition to its use in G. L. c. 140, § 121, the term "deadly weapon" appears only three other times in the General Laws, none of which provide guidance on the Legislature's intended meaning of the term in the context at

we apply well-established principles of statutory construction to determine its meaning. The Commonwealth argues that the Legislature intended "deadly weapon" to be interpreted as synonymous with the term "dangerous weapon" as used in our common law. We disagree.

In general, "a statute is to be interpreted 'according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated.'" Commonwealth v. Welch, 444 Mass. 80, 85 (2005), quoting from Commonwealth v. Galvin, 388 Mass. 326, 328 (1983). To interpret the term "deadly weapon" as interchangeable with the term "dangerous weapon" in this context would be inconsistent with the ordinary usage of the terms, the intent of the Legislature, and the language of the Federal analog, on which the Massachusetts ACCA was modeled.

a. Plain meaning. We begin of course "with the language of the statute itself and 'presume, as we must, that the Legislature intended what the words of the statute say.'"

---

issue here. See G. L. c. 209A, § 6; G. L. c. 258E, § 8; and G. L. c. 127, § 133E. Likewise, the Legislature has not defined "dangerous weapon" in the General Laws. See Commonwealth v. Wynton W., 459 Mass. 745, 747 (2011).

Commonwealth v. Williamson, 462 Mass. 676, 679 (2012), quoting from Commonwealth v. Young, 453 Mass. 707, 713 (2009).  Here, had the Legislature intended for the Massachusetts ACCA to apply to all juvenile adjudications involving dangerous weapons, it could have used the term "dangerous weapon" rather than "deadly weapon."

Furthermore, "[w]here the language of a statute is plain, it must be interpreted in accordance with the usual and natural meaning of the words."  Commonwealth v. Kerns, 449 Mass. 641, 651 (2007) (quotation omitted).  See G. L. c. 4, § 6, third par. ("Words and phrases shall be construed according to the common and approved usage of the language; but technical words and phrases and such others as may have acquired a peculiar and appropriate meaning in law shall be construed and understood according to such meaning").  Contrary to the Commonwealth's argument, the words "deadly" and "dangerous" do not have the same meaning under ordinary usage.  Webster's Third New International Dictionary 580 (2002) (Webster's) defines "deadly" as "tending to produce death."  Notably, it identifies "mortal," "lethal," "fatal," and "deathly" as synonyms of deadly, but does not include dangerous on this list.  In contrast, Webster's defines "dangerous" as "able or likely to inflict injury; causing or threatening harm."  Id. at 573.

These definitions make clear that "deadly" has both a stronger and narrower meaning than "dangerous." "Deadly" connotes an inevitability of death, or at least a higher certainty of death than does "dangerous." In other words, what is deadly is patently also dangerous, but it does not follow that what is dangerous is necessarily deadly.

Our conclusion is bolstered by the additional and similar principle of statutory construction that requires us to presume that the Legislature was well aware of the use of the term "dangerous weapon" in our statutes and the meaning attributed to that term in our decades of decisional law. See generally Commonwealth v. Russ R., 433 Mass. 515, 520 (2001) ("Legislature is presumed to be aware of existing statutes when it . . . enacts a new one"); Commonwealth v. Garcia, 82 Mass. App. Ct. 239, 244 (2012). Together, our decisional and statutory law outlines an expansive description of what may constitute a dangerous weapon, and that description may well draw within its purview weapons that may be dangerous, but not deadly. See generally Commonwealth v. Appleby, 380 Mass. 296, 303-304 (1980).

This historical background, in addition to the plain statutory language, suggests that the Legislature intended to distinguish the type of weapon that would support a conviction under the Massachusetts ACCA by requiring proof of not merely a

dangerous weapon, but proof of a deadly weapon.  That the Legislature used the term "deadly weapon" and not "dangerous weapon" speaks to its intent that the term carry a narrow meaning in the context of the armed career criminal statute.  By contrast, the Commonwealth's proposed interpretation would eliminate the significance of the Legislature's choice of language.  We instead construe the statute so as to give meaning to all of its terms.  See Commonwealth v. Mendonca, 50 Mass. App. Ct. 684, 687 (2001).

The Commonwealth correctly notes that the terms "dangerous weapon" and "deadly weapon," at times, have been used interchangeably in our case law.  However, until recently, no statute has required us to consider the difference between the two terms.  We have not found, and the Commonwealth does not identify, any published case in which our court or the Supreme Judicial Court has compared the definitions of the two terms or adopted a position that the two terms are synonymous as a matter of law, and we decline to adopt such a position here.[6]

---

[6] The terms are not used interchangeably in two of the cases on which the Commonwealth relies.  At issue in Commonwealth v. Shea, 38 Mass. App. Ct. 7 (1995), was whether the ocean can be considered a weapon within the meaning of G. L. c. 265, § 15A. Our only mention of the term "deadly weapon" in that case was in a footnote explaining that the definition of dangerous weapon adopted in the Proposed Criminal Code of Massachusetts c. 263, § 3(i) (noted with approval in Commonwealth v. Tarrant, 367 Mass. 411, 417 n.6 [1975], to which we were citing), tracked the definition of "deadly weapon" set out in § 210 of the Model

Furthermore, the inherent deadliness of the weapon was not at issue in any of the cases in which the terms were used interchangeably.[7]

---

Penal Code (1980). See Shea, supra at 15 n.7. In so observing, we did not adopt a definition of deadly weapon or suggest that the two terms are in fact synonymous under Massachusetts law. Rather, we were noting that both definitions require that a weapon be some sort of object or instrumentality that was capable of being possessed or controlled, unlike the ocean.

We also do not read the Supreme Judicial Court's use of the terms in Commonwealth v. Kerns, 449 Mass. at 651-655, to be interchangeable. Kerns involved a juvenile who was charged with "threatening to use deadly weapons" under G. L. c. 269, § 14(b). Id. at 642. The court interpreted the statute at issue in that case as intending to "punish the communication of any threat that a deadly, dangerous, or destructive device, substance, or item is or will be present or used at a specified place or location." Id. at 652. The court's use of the three adjectives suggests that it did not assign precisely the same meaning to each. This interpretation is consistent with the plain language of G. L. c. 269, § 14(b)(1), as amended by St. 2002, c. 313, § 2, which includes "any other device, substance or item capable of causing death, serious bodily injury or substantial property damage," clearly covering devices capable of causing varying degrees of harm, not only those that are deadly. Consequently, the court's interpretation of G. L. c. 269, § 14(b), supports our conclusion that the terms "deadly weapon" and "dangerous weapon" have distinct meanings under the common law.

[7] In two out of the three cases to which the Commonwealth appropriately points, the weapon at issue was a firearm, which would clearly qualify as both a dangerous and a deadly weapon. See Commonwealth v. Maldonado, 429 Mass. 502, 509 n.6, 510 (1999); Commonwealth v. Williams, 18 Mass. App. Ct. 945, 946 (1984). This leaves only one case identified by the Commonwealth in which the use of the term "deadly weapon" is inconsistent with our interpretation today, and the nature of the weapon used was not at issue in that case. See Commonwealth v. Wilson, 72 Mass. App. Ct. 416, 417-418 (2008) (once referring to crime of "assault and battery with a dangerous weapon" as "assault and battery with a deadly weapon" but evaluating

Instead, while the meaning of deadly weapon has not been widely explored in our case law, our limited discussion of the term suggests that the term has independent legal significance. Although decided after the enactment of G. L. c. 140, § 121, we concluded in Commonwealth v. Foreman, 63 Mass. App. Ct. 801, 803 (2005), that "[t]he definition of violent crime in [G. L. c. 140,] § 121[,] uses 'deadly weapon' in the general, common-law sense." We relied, in part, on Commonwealth v. Claudio, 418 Mass. 103, 108 (1994), which stated, "[a]s a general principle, our cases treat those felonies involving the use of a deadly weapon, such as a knife or a loaded gun, as inherently dangerous to human life." See Commonwealth v. Turner, 59 Mass. App. Ct. 825, 828-830 (2003) (knife is commonly thought of as deadly weapon).

In addition, while reviewing other jurisdictions' law on the issue of a weapon's apparent ability to inflict harm for the purposes of assault by means of a dangerous weapon, the Supreme Judicial Court has noted that "some [jurisdictions'] decisions are based on the application of statutes relating to assaults with 'deadly weapons' which may mean something different from or more than the words 'dangerous weapon' used in [G. L. c. 265,

---

whether assault and battery can be on Commonwealth rather than on person).

§ 15A]" (emphasis supplied).  Commonwealth v. Henson, 357 Mass. 686, 691 n.1 (1970).

b.  Legislative purpose.  Next, our interpretation of the term deadly weapon is consistent with the Legislature's intent in enacting the Massachusetts ACCA.

In 1998, the Legislature adopted the current version of G. L. c. 140, § 121 (and its definition of violent crime) together with the armed career criminal sentencing enhancements in G. L. c. 269, § 10G, as part of an extensive package of legislative revisions by which it substantially altered the gun control laws.  See St. 1998, c. 180, §§ 8 (defining terms for firearms laws), 71 (adopting armed career criminal provision).  See also Commonwealth v. Furr, 58 Mass. App. Ct. 155, 157-158 (2003).  In enacting G. L. c. 269, § 10G, the Legislature intended to increase penalties for individuals convicted of serious crimes who subsequently violated firearms laws.  See id. at 158.

However, it is clear from its restriction of the qualifying juvenile offenses that the Legislature intended the law to treat prior delinquency adjudications differently from adult convictions.  As the Commonwealth acknowledges, the Legislature's facially apparent purpose for this distinction is to restrict the statute's application to juvenile offenses to those that involved a risk to life.  Again, if the Legislature

had intended to provide for sentencing enhancements when a prior juvenile adjudication involved any dangerous weapon, it could have done so explicitly.  Therefore, to construe the phrase "deadly weapon" broadly so as to encompass all dangerous weapons would be at odds with the apparent legislative intent of the statute.

c.  Federal Armed Career Criminal Act.  Moreover, in construing the definition of "deadly weapon" as distinct from "dangerous weapon," our construction of the statute is consistent with the language of the Federal Armed Career Criminal Act (Federal ACCA), to which our courts have long turned for interpretive guidance.  See generally Commonwealth v. Colon, 81 Mass. App. Ct. 8, 14 (2011).[8]

Where the Massachusetts ACCA allows sentence enhancement only where acts of juvenile delinquency "involve the use or possession of a deadly weapon" (emphasis supplied), G. L. c. 140, § 121, the Federal analog allows enhancement only where such acts "involv[e] the use or carrying of a firearm, knife, or destructive device" (emphasis supplied).  18 U.S.C.

---

[8] The language of the Massachusetts ACCA closely tracks that of the Federal analog, with only a few differences.  For example, the Federal ACCA uses the term "violent felony" rather than the term violent crime.  Compare 18 U.S.C. § 924(e)(1) (2006) with G. L. c. 239, § 10G.  See Commonwealth v. Colon, supra at 12-14.

§ 924(e)(2)(B).[9]  The Federal ACCA does not allow enhancement for all juvenile offenses involving dangerous weapons, but only for a subset of weapons that our common law would recognize as deadly.  The Massachusetts ACCA achieves the same result by explicitly using the term "deadly" instead of listing deadly weapons.

d.  <u>Narrow construction</u>.  Finally, it is well established as a general matter that criminal statutes are to be construed narrowly, further constraining us to resolve any reasonable doubt as to the statute's use of the term deadly weapon in favor of the defendant.  See <u>Commonwealth</u> v <u>Kerr</u>, 409 Mass. 284, 286 (1991); <u>Commonwealth</u> v. <u>Pagan</u>, 445 Mass. 161, 167 (2005).

2.  <u>Meaning of "deadly weapon" under the statute</u>.  Because we conclude that "deadly weapon" is a term with independent legal significance, we must now determine its meaning as used by

---

[9] The Federal statute defines "violent felony" as follows:

"any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that --

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."

18 U.S.C. § 924(e)(2)(B).

the Legislature in its definition of violent crime for the purposes of G. L. c. 269, § 10G. The Commonwealth argues that the Legislature intended the armed career criminal statute to apply to prior juvenile offenses involving weapons that were deadly as used, not only to those involving weapons that are inherently deadly. We disagree and conclude that for the purposes of the Massachusetts ACCA, a prior juvenile offense may serve as a predicate offense only if the Commonwealth can prove that the weapon used or possessed in the commission of the offense was inherently deadly.

a. Scope of inquiry into prior convictions. To interpret the term "deadly weapon" in the context of this statutory scheme to include weapons that are not inherently deadly would be contrary to the United States Supreme Court's recent reasoning in Johnson v. United States, 135 S. Ct. 2551 (2015), as to the appropriate scope of inquiry into prior convictions for the purposes of finding a defendant to be an armed career criminal.[10]

The Supreme Court has long curtailed extensive fact finding by the sentencing court. It has held that other than in a narrow range of cases, the Federal ACCA "mandates a formal categorical approach [in determining whether a prior offense qualifies as a predicate offense], looking only to the statutory

_____

[10] Johnson, supra, involved the residual clause of the Federal ACCA, but the Court's reasoning applies here as well. See note 11, infra.

definitions of the prior offenses, and not to the particular facts underlying those convictions."  Taylor v. United States, 495 U.S. 575, 600-602 (1990), cited favorably by Johnson, supra at 2562.  See Shepard v. United States, 544 U.S. 13, 16 (2005).

The Court in Johnson, supra at 2557, recently concluded that the residual clause of the Federal ACCA[11] was unconstitutionally vague, reasoning, in part, that the language of the clause requires sentencing judges to evaluate specific facts surrounding the commission of the predicate offense, rather than simply consider the elements of the offense.  For us to hold that deadly weapons for the purposes of the Massachusetts ACCA includes weapons that are deadly only when used in a particular manner -- in other words, that are not inherently deadly -- would require exactly the type of analysis that the Supreme Court rejected in Johnson.  The fact finder necessarily would have to evaluate whether, in the commission of a prior offense, the defendant used an object in a manner that was deadly, rather than simply whether the element of the crime

---

[11] "Under the [Federal ACCA], a defendant convicted of being a felon in possession of a firearm faces more severe punishment if he has three or more previous convictions for a 'violent felony,' a term defined to include any felony that 'involves conduct that presents a serious potential risk of physical injury to another'" (emphasis supplied).  Johnson, supra at 2555, quoting from 18 U.S.C. § 924(e)(2)(B).  The emphasized clause is known as that statute's residual clause.  Id. at 2556.

charged required proof that the weapon used was deadly.  Cf.

Johnson, supra.[12]

Therefore, unless the Commonwealth can prove, without

inquiring into the manner in which the weapon was used, that a

prior adjudication involved a deadly weapon, the adjudication

_____

[12] We also have adopted the categorical approach under the Massachusetts ACCA for cases in which "the statutory definition of the prior offense unambiguously qualifies that offense as a predicate conviction."  Commonwealth v. Colon, 81 Mass. App. Ct. at 5.

However, we have held that "in the narrow range of cases where the statutory or common-law definition of a prior offense does not conclusively bring it within the category of 'violent crimes,' the familiar sufficiency of the evidence standard mandates [a] modified categorical approach," which "permits a court to determine which statutory phrase was the basis for the conviction by consulting the trial record -- including charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms."  Id. at 16 (quotation omitted).

Accepting the determination that the Legislature intended the term "deadly weapon" to have independent legal significance under the statute, the elements of assault and battery by means of a dangerous weapon do not "unambiguously qualif[y] that offense as a predicate conviction," Colon, supra, when the offense was committed as a juvenile because to qualify, the offense must have been committed with a deadly weapon. Therefore, under Colon, the fact finder for a charge under the Massachusetts ACCA may consult the trial record to determine if the dangerous weapon used in the underlying juvenile offense was also a deadly weapon.  Such an inquiry is still appropriate under Johnson, insofar as the question is whether the weapon used was inherently deadly.  The nature of the weapon itself can easily be ascertained from the record without requiring additional fact finding about the use of the weapon, which may not be apparent from the trial record.  We cannot assume that because a jury found that the weapon used was dangerous (either inherently or as used), they also would have found that the defendant used the weapon in a deadly manner.

cannot qualify as a predicate offense for a conviction under G. L. c. 269, § 10G. To hold otherwise would render the clause unconstitutionally vague under Johnson.

b. _Ordinary usage and common-law meanings_. The Commonwealth also argues that because our common-law understanding of "dangerous weapon" includes weapons that are not inherently dangerous, the same must be true of our definition of "deadly weapon." Such a conclusion does not necessarily follow and conflicts with the ordinary meaning of the word "deadly."

The Commonwealth points to, and we have found, no cases in which we have applied this construction to the term "deadly weapon." To the contrary, as discussed above, our cases discussing deadly weapons have generally involved the use of those that are "inherently dangerous to human life." Commonwealth v. Claudio, 418 Mass. at 108. See Commonwealth v. Drew, 4 Mass. 391, 396 (1808) (describing deadly weapon as one that would "necessarily," was "likely to," or would "probably," kill or do great bodily harm).

Finally, to include weapons that are deadly only as used for the purposes of the Massachusetts ACCA would effectively eliminate the discrete distinction between "deadly weapon" and "dangerous weapon" and, consequently, equate the two terms. For the reasons already stated, we decline to interpret the statute

in such a way that fails to give meaning to the Legislature's choice of words.[13]

3. A pen is not a deadly weapon for the purposes of the Massachusetts ACCA. Because we hold that, for the purposes of a conviction under G. L. c. 269, § 10G, a deadly weapon must be one that is inherently deadly, and because a pen is not inherently deadly, we need not reach the defendant's alternative argument that the manner in which he used the pen in the commission of his juvenile offense was not deadly.[14]

Conclusion. We reverse the defendant's conviction under G. L. c. 269, § 10G(c), as an armed career criminal based on three predicate violent crimes and remand for his resentencing as an armed career criminal based on two predicate violent crimes under G. L. c. 269, § 10G(b). The remaining judgments are affirmed.

So ordered.

---

[13] If the Legislature intended "deadly" to be synonymous with "dangerous," it is free to amend the statute to reflect that purpose.

[14] We do not comment on all of the weapons that would be considered inherently deadly except to say that the category clearly includes loaded firearms, certain knives, and explosive devices. See Commonwealth v. Claudio, 418 Mass. at 108.