NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

21-P-800                                          Appeals Court

COMMONWEALTH  vs.  CARLOS BASTOS.

No. 21-P-800.

Plymouth.     May 3, 2023. – September 20, 2023.

Present:  Massing, Ditkoff, & Singh, JJ.

Firearms.  Assault and Battery by Means of a Dangerous Weapon.
    Dangerous Weapon.  Statute, Retroactive application.
    Practice, Criminal, New trial, Juvenile delinquency
    proceeding, Prior conviction, Sentence, Motion to suppress,
    Standing, Waiver.  Estoppel.  Search and Seizure, Standing
    to object, Consent, Emergency.

Indictments found and returned in the Superior Court
Department on September 2, 2011.

The cases were heard by Cornelius J. Moriarty, II, J.;
motions for postconviction relief, filed on October 25, 2019,
also were heard by him; and motions for postconviction relief
also were heard by William F. Sullivan, J.

Michael J. Hickson for the defendant.
Mary H. Nguyen, Assistant District Attorney, for the
Commonwealth.

MASSING, J.  The defendant, Carlos Bastos, was convicted

after a bifurcated bench trial in the Superior Court of unlawful

possession of ammunition in violation of G. L. c. 269,
§ 10 (h) (1), and of being a prior violent offender with two
predicate convictions under the Massachusetts armed career
criminal act (ACCA), G. L. c. 269, § 10G (b).  He did not appeal
from the judgment, but six years later simultaneously filed
three postconviction motions challenging the denial of his
motion to suppress, the immunization of a witness, and his
sentence.  Because the defendant's prior adjudication as a
youthful offender for armed robbery did not involve a "deadly
weapon" and therefore did not qualify as a "violent crime"
within the meaning of the Massachusetts ACCA, we reverse the
defendant's conviction under G. L. c. 269, § 10G (b), and remand
for resentencing based on one predicate offense under G. L.
c. 269, § 10G (a).  Discerning no other error in the denial of
the various motions, we affirm the orders denying them.

Background.  In 2011, the defendant was indicted for
unlawful possession of ammunition as an "armed career criminal"
under G. L. c. 269, § 10G (c),[1] based on three predicate
offenses:  a 2007 conviction for assault by means of a dangerous
weapon, a 2003 adjudication of delinquency for assault and
battery by means of a dangerous weapon (ABDW), and a 2006

---

[1] See Commonwealth v. Johnson, 102 Mass. App. Ct. 195, 206
n.9 (2023) (discussing use of term "armed career criminal").

youthful offender adjudication for armed robbery while masked. The defendant filed a motion to suppress the ammunition and other evidence, which a judge (first motion judge) denied after an evidentiary hearing in 2012. In 2013, the defendant waived his right to a jury trial and was tried before a different judge (trial judge).

We briefly outline the facts introduced at trial. On July 15, 2011, responding to a report of a shooting at the corner of Green and Newbury Streets in Brockton, Detective Nazaire Paul went to 45 Newbury Street and spoke with Anna Fernandes, the owner of the house. Fernandes led Paul around to the back door, which was open, where Paul encountered Amthomesha Gomes in the kitchen. Gomes said she was home alone and denied that anyone had run inside the house. Paul entered, with Fernandes behind him, and opened a bedroom door, where he found the defendant lying on the bed. Paul escorted the defendant outside, where other officers detained him. Paul, joined by Sergeant Mark Celia, returned to the house and questioned Gomes, who eventually told the officers that they would find bullets in the bedroom. The police found a plastic bag containing four .45 caliber bullets under the mattress on which the defendant had

been lying. Gomes told the officers that the defendant had given her the bullets a few days earlier.[2]

The trial judge found the defendant guilty. At the subsequent bench trial on the ACCA indictment, defense counsel argued, to no avail, that the Legislature had intentionally distinguished between "deadly" weapons and "dangerous" weapons with respect to prior adjudications of delinquency. The judge found that the defendant had been previously convicted of only two prior violent crimes: the assault by means of a dangerous weapon, for which he was convicted as an adult, and the armed robbery, for which he was adjudicated a youthful offender.[3] The judge sentenced the defendant to a State prison term of from ten years to ten years and one day, with credit for 777 days of time served. The defendant did not appeal from the judgment.

In 2019, the defendant filed three motions challenging various aspects of his 2013 conviction and sentence: a motion for a required finding of not guilty pursuant to Mass. R. Crim. P. 25 (b) (2), as amended, 420 Mass. 1502 (1995), and two

---

[2] Gomes testified at the defendant's trial under a grant of immunity pursuant to G. L. c. 233, §§ 20C-20E. She testified, contrary to her statements to the police and her grand jury testimony, that the defendant had not given her the bullets.

[3] The judge did not articulate which of the two prior convictions he relied upon. The parties agree that the judge did not rely on the adjudication of delinquency for ABDW (shod foot), which occurred when the defendant was thirteen years old.

motions for new trial pursuant to Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001).  The defendant argued in his rule 25 (b) (2) motion that the evidence at the sentencing enhancement trial was insufficient to prove two predicate offenses because the youthful offender adjudication involved armed robbery with a "fake handgun," and under Commonwealth v. Rezendes, 88 Mass. App. Ct. 369 (2015), that adjudication did not qualify as a violent crime.  The defendant argued in his rule 30 motions that the trial judge erred by granting the Commonwealth's application to grant immunity to Gomes to compel her testimony, and that the first motion judge erred by denying the defendant's 2012 motion to suppress.  The trial judge denied the defendant's rule 25 (b) (2) motion, but did not act on the new trial motions.  A third judge (second motion judge) denied the rule 30 motions.  The defendant timely appealed from the denial of each motion.

Discussion.  1.  Sentencing.  Under G. L. c. 269, § 10G (e), "violent crime" has the meaning set forth in G. L. c. 140, § 121, which, as relevant here, defines the term as "any act of juvenile delinquency involving the use or possession of a deadly weapon that would be punishable by imprisonment for [a term exceeding one year] if committed by an adult, that . . . has as an element the use, attempted use or threatened use of physical force or a deadly weapon against the person of

another."  In Rezendes, 88 Mass. App. Ct. at 377-378, we held
that "for the purposes of the Massachusetts ACCA, a prior
juvenile offense may serve as a predicate offense only if the
Commonwealth can prove that the weapon used or possessed in the
commission of the offense was inherently deadly."  See
Commonwealth v. Anderson, 461 Mass. 616, 631-632 (2012) ("where
a defendant has been previously 'convicted' as a juvenile of a
'violent crime,' the prior 'conviction' should trigger the
enhanced sentencing provisions of § 10G only where the act of
juvenile delinquency, apart from the other requirements,
involves 'the use or possession of a deadly weapon'").[4]  The
Commonwealth must prove that the juvenile adjudication involved
a deadly weapon "without inquiring into the manner in which [it]
was used."  Rezendes, supra at 379.

The record at the defendant's sentencing enhancement
hearing is devoid of any evidence that his youthful offender
adjudication for armed robbery involved a deadly weapon.  The
use of a deadly weapon could not be inferred merely from the
fact of the adjudication, because the crime refers to "being
armed with a dangerous weapon," G. L. c. 265, § 17, not a deadly
one.  See Rezendes, 88 Mass. App. Ct. at 373 ("'deadly' has both

---

[4] A youthful offender adjudication is considered an "act of
juvenile delinquency" under G. L. c. 140, § 121.  See Anderson,
461 Mass. at 629-632.

a stronger and narrower meaning than 'dangerous'").  The
Commonwealth presented no evidence of the type of weapon the
defendant possessed.  With his rule 25 (b) (2) motion, however,
the defendant submitted the relevant indictment, which charged
him with being "armed with a dangerous weapon, namely:  a fake
handgun."  While a fake or toy handgun can be considered a
"dangerous weapon" under G. L. c. 265, § 17, depending on how it
is used, see Commonwealth v. Powell, 433 Mass. 399, 401-402
(2001), nothing in the record indicates that the fake handgun
used here was "inherently deadly."  The defendant's youthful
offender adjudication for armed robbery does not qualify as a
"violent crime."

In his rule 25 (b) (2) motion, the defendant sought
retroactive application of Rezendes, which was decided after his
conviction and sentence became final.[5]  The Commonwealth argues
that Rezendes does not apply to cases on collateral review
because it constituted a new rule of criminal procedure and,
under the "Teague-Bray framework," applied only to cases pending
on direct appeal.  See Commonwealth v. Ashford, 486 Mass. 450,

---

[5] A motion for relief under the second sentence of rule
25 (b) (2), which allows the judge to set aside a verdict and
order a new trial, order the entry of a finding of not guilty,
or order the entry of a finding of guilty of any lesser included
offense, can be filed at any time.  See Commonwealth v. Gilbert,
447 Mass. 161, 166 (2006).

457 (2020), citing <u>Teague</u> v. <u>Lane</u>, 489 U.S. 288, 307 (1989), and <u>Commonwealth</u> v. <u>Bray</u>, 407 Mass. 296, 303 (1990). The <u>Teague-Bray</u> framework is inapplicable here, however, because <u>Rezendes</u> involved a question of statutory construction. "In general, when we construe a statute, we do not engage in an analysis whether that interpretation is given retroactive or prospective effect; the interpretation we give the statute usually reflects the court's view of its meaning since the statute's enactment." <u>Ashford</u>, <u>supra</u> at 453, quoting <u>Eaton</u> v. <u>Federal Nat'l Mtge. Ass'n</u>, 462 Mass. 569, 587 (2012).

Because the <u>Rezendes</u> court's construction of the ACCA was not constitutionally required, we have discretion to apply it prospectively only, but "[t]here must be good reason 'to disturb the presumptively retroactive application' of a statutory interpretation." <u>Ashford</u>, 490 Mass. at 453, quoting <u>American Int'l Ins. Co</u>. v. <u>Robert Seuffer GmbH & Co. KG</u>, 468 Mass. 109, 121, cert. denied, 574 U.S. 1061 (2014). "This discretion is guided by consideration of the novelty of the interpretation, whether retroactivity is consistent with the purposes of the rule announced, and whether 'hardship or inequity would result from retroactive application.'" <u>Ashford</u>, <u>supra</u>, quoting <u>American Int'l Ins. Co</u>., <u>supra</u>.

We discern no good reason not to apply <u>Rezendes</u> retroactively to the defendant's conviction. Distinguishing a

"deadly" weapon from a "dangerous" one was not a novel interpretation. The need to prove that a juvenile adjudication involved a "deadly" weapon is not only clear on the face of the statute, see Rezendes, 88 Mass. App. Ct. at 373, but was also signaled in Anderson, 461 Mass. at 631-632, which was decided before the defendant's trial. Retroactive application is consistent with the purpose of the ACCA, which maintains the legislative distinction between juvenile and youthful offender adjudications and adult criminal convictions. See Anderson, supra at 630-632. Finally, the interpretation could not be said to create hardship or inequity for the Commonwealth. The statute specifically uses the term "deadly weapon," the defendant raised the distinction between "deadly" and "dangerous" weapons at sentencing, and even with abundant advance warning, the Commonwealth would not have been able to prove that a "fake gun" was a deadly weapon.

Following the general rule that decisions interpreting statutes are fully retroactive, the defendant is entitled to application of Rezendes here. His youthful offender adjudication for armed robbery with a "fake gun" did not qualify as a prior "violent crime" within the meaning of the ACCA. The defendant should have been sentenced as a violent criminal with only one predicate offense under G. L. c. 269, § 10G (a).

2.  New trial motions.  The defendant's two new trial motions both asserted violations of the rights of Amthomesha Gomes.  The defendant contends that the trial judge committed reversible error by improperly compelling Gomes to testify under a grant of immunity, and that the first motion judge should have allowed his motion to suppress because the entry and search of Gomes's bedroom without a warrant lacked constitutional justification.  "On a written motion, a judge 'may grant a new trial at any time if it appears that justice may not have been done.'"  Commonwealth v. Sanchez, 485 Mass. 491, 498 (2020), quoting Mass. R. Crim. P. 30 (b).  As a general matter, we review the decision on a motion for new trial only for significant errors of law or other abuse of discretion; "[w]here, however, the motion judge did not preside at trial and did not conduct an evidentiary hearing, as happened here, we are in as good a position as the motion judge to assess the trial record and therefore review the motion judge's decision de novo."  Commonwealth v. Watkins, 486 Mass. 801, 804 (2021).

a.  Gomes's grant of immunity.  The defendant asserts that the trial judge erred in granting Gomes immunity because the defendant's case did not involve any of the crimes specified in G. L. c. 233, § 20D.  Although the enumerated crimes include "firearm violations" and "any felony," the defendant argues that the unlawful possession of ammunition is a misdemeanor and not a

firearm violation.  The second motion judge held that because the defendant was charged as an armed career criminal and faced the possibility of a State prison sentence, his case did involve a felony.  The judge did not reach the question whether unlawful possession of ammunition under G. L. c. 269, § 10 (h) (1), which criminalizes unlawful possession, ownership, or transfer of "a firearm, rifle, shotgun or ammunition," is a firearm violation within the meaning of G. L. c. 233, § 20D.

We do not reach either of these issues because the defendant plainly does not have standing to argue that an immunized witness testified under an improper grant of immunity.  See Commonwealth v. Figueroa, 451 Mass. 566, 578 (2008); Smith v. Commonwealth, 386 Mass. 345, 349 (1982).  "[T]he statutory procedure for a grant of immunity is designed to accommodate the witness's rights and the State's need for evidence.  The statute is simply not addressed to the interests of defendants." Figueroa, supra, quoting Smith, supra.

b.  Motion to suppress.  The defendant does have standing to challenge the seizure of the ammunition that he was found guilty of possessing.  "[A] defendant may rely on another's reasonable expectation of privacy . . . where the defendant has been charged with possessing contraband at the time of the search and, also at the time of the search, the property was . . . in a place where the codefendant had a reasonable

expectation of privacy." Commonwealth v. DeJesus, 489 Mass. 292, 296-297 (2022). The indictment specified that the charged act of possession occurred on the date of the search. Gomes qualifies as a "codefendant" because she could have been charged with the same crime as the defendant. See id. at 293 n.2.

The defendant did not appeal from his conviction and therefore did not challenge the denial of his motion to suppress on direct appeal. The Commonwealth argues that although "[a] motion for a new trial under rule 30 (b) may include a request to reconsider a ruling on a motion to suppress evidence," Commonwealth v. Rodriguez, 443 Mass. 707, 709 (2005), his request to do so here is barred by direct estoppel, see id. at 709-710.

"For direct estoppel to apply, the Commonwealth must show that the issues raised in the defendant's rule 30 (b) motion were actually litigated and determined on the defendant's original motion to suppress, that such determination was essential to the defendant's conviction, and that the defendant had an opportunity to obtain review of the determination of [the] motion to suppress" (emphasis added). Rodriguez, 443 Mass. at 710. See Sena v. Commonwealth, 417 Mass. 250, 260 (1994) ("for collateral estoppel to preclude litigation of an issue, there must have been available some avenue for review of the prior ruling on the issue"). Here, the motion to suppress

was litigated and determined, the denial of the motion was essential to the conviction, and the defendant had an available avenue and opportunity to appeal.  However, we are not aware of any Massachusetts precedent in which the doctrine of direct estoppel has been applied against a criminal defendant who did not actually take an appeal from the decision adjudicating the issue sought to be relitigated.

We think that this case is best treated as one in which the defendant waived his claim by failing to assert it at the earliest opportunity, which we review for a substantial risk of a miscarriage of justice.  See Commonwealth v. Randolph, 438 Mass. 290, 294-295 (2002); Commonwealth v. Azar, 435 Mass. 675, 685 (2002); Commonwealth v. Crawford, 430 Mass. 683, 685 (2000).  Cf. Commonwealth v. Smith, 460 Mass. 318, 320-321 (2011) ("in a capital case, issues raised in a postappeal motion for a new trial that were or could have been raised at trial or in the direct appeal are to be measured by the substantial risk of a miscarriage of justice standard").  In addition, if the defendant had a meritorious appeal from the denial of his motion to suppress, but he did not pursue the appeal because of neglect or erroneous advice on the part of counsel, he may well have a viable new trial motion based on ineffective assistance.  See White v. Commonwealth, 479 Mass. 1023, 1024 (2018); Commonwealth v. Cowie, 404 Mass. 119, 122-123 (1989); Commonwealth v.

Claudio, 96 Mass. App. Ct. 787, 794 (2020).  Whether we review the defendant's late-raised claim directly under the substantial risk of a miscarriage of justice standard, or indirectly as a claim of ineffective assistance of counsel, "our approach is essentially the same."  Azar, supra at 686-687.

We discern no risk of a miscarriage of justice based on the initial entry or search of Gomes's bedroom.  As the second motion judge concluded, Paul's warrantless entry into the bedroom, where he located and arrested the defendant, was both justified, based on information that a person who had just been involved in a shooting nearby had fled inside the building, and limited in scope.  See Commonwealth v. Peters, 453 Mass. 818, 823-825 (2009); Commonwealth v. McCollum, 79 Mass. App. Ct. 239, 250-251 (2011).  In addition, Paul entered the dwelling with the permission of Fernandes, whom he encountered unloading groceries from her car parked in the driveway.  Fernandes told Paul that she and her husband owned the building and then accompanied Paul to the rear entrance.  Where Paul relied on Fernandes's apparent authority, as he responded to an ongoing emergency, the denial of the motion to suppress did not create a risk of a miscarriage of justice.  See Commonwealth v. Porter P., 456 Mass. 254, 270-271 (2010); Commonwealth v. Santos, 97 Mass. App. Ct. 719, 723 (2020).

The subsequent search of the bedroom was conducted only after the officers inquired further into the ownership and occupancy of the premises and obtained written consent from Gomes's mother, who lived with Gomes in the first-floor unit.[6] The record supports the second motion judge's conclusion that Gomes's mother shared common authority over the home and had actual authority to consent to the search.  See Porter P., 456 Mass. at 262.  To the extent the officers could have been more diligent in verifying Gomes's mother's authority to consent to the search, see id. at 271, we do not perceive a substantial risk of a miscarriage of justice.

Conclusion.  The orders denying the defendant's motions for new trial are affirmed.  The order denying the defendant's rule 25 (b) (2) motion is reversed.  The matter is remanded to the Superior Court, where the judgment of conviction under G. L. c. 269, § 10G (b), based on two predicate violent crimes, shall be reversed and the finding set aside.  Judgment shall enter

---

[6] The evidence at the suppression hearing showed that Fernandes and her husband, Arthur DePina, coowned the building, a two-family dwelling, and lived on the second floor.  The first-floor unit was occupied by Gomes's and DePina's mother and Gomes.  DePina also gave Paul written consent to search the first-floor unit, but upon learning that DePina did not reside in that unit, Paul obtained written consent from Gomes's mother, who did.  Although the consent form had to be translated for Gomes's mother, nothing in the record causes us to question the first motion judge's determination that her consent was knowing and voluntary.

under G. L. c. 269, § 10G (<u>a</u>), based on one predicate violent crime, and the defendant shall be resentenced accordingly.

<u>So ordered</u>.